IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 11-212 |
| | : |
| AUSTIN AYERS WINTHER | : |

—————————————————————

**DuBois, J.**                                                        **November 18, 2011**

# M E M O R A N D U M

## I.    INTRODUCTION

Defendant Austin Ayers Winther is charged with one count of enticing interstate travel for illegal sexual activity in violation of 18 U.S.C. § 2422(a), one count of using means of interstate commerce to entice a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b), and four counts of attempted transfer of obscenity to a minor in violation of 18 U.S.C. § 1470.  Presently before the Court are Defendant's Motion to Suppress Statement and Defendant's Motion to Suppress Physical Evidence.  The Court conducted an evidentiary hearing and heard oral argument on the motions on November 4, 2011.  For the reasons set forth below, the Court denies both motions.

## II.    BACKGROUND

Federal Bureau of Investigation ("FBI") agents arrested defendant at Philadelphia International Airport on March 14, 2011, following an undercover investigation that lasted approximately six months.  From October 20, 2010, until March 2011, defendant allegedly engaged in extensive, sexually charged communication over the Internet with an undercover police officer in Boise, Idaho, believing the undercover officer to be a mother and her thirteen-

year-old daughter ("Jill" and "Jen," respectively).  The government contends that defendant went to the airport because he believed "Jill" and "Jen" were traveling to Philadelphia to visit him and engage in sexual acts with him.  Defendant moves to suppress a statement he made to FBI agents after his arrest on March 14, 2011, and evidence from a computer that agents recovered from defendant's home pursuant to a search warrant.

**A.  Facts**

1.  <u>Arrest and FBI Interview</u>

FBI Special Agent Andrea Manning arrested defendant at Philadelphia International Airport on March 14, 2011, around 11:30 a.m.  (Nov. 4, 2011, Suppression Hearing Tr. ("Tr.") 6-7.)  FBI agents Andrew Braybender, Brian Coglin, and Brett Bonine were also present.  (<u>Id.</u> at 7.)  At that time, the agents told defendant that he was under arrest for enticing a minor for sexual purposes but did not question him.  (<u>Id.</u> at 8, 26.)  Agents Braybender and Bonine transported defendant to the FBI Field Office in Philadelphia.  (<u>Id.</u> at 9.)  No questioning took place during the transport.  (<u>Id.</u> at 28.)

At the FBI Field Office, defendant was processed and fingerprinted.  (<u>Id.</u> at 9.)  Thereafter, the United States Pretrial Services Office interviewed him ("the Pretrial Services interview").  (<u>Id.</u> at 9, 32-33.)  As part of the Pretrial Services interview, defendant answered questions about his "age, background . . . mental health status . . . and personal information."  (<u>Id.</u>)  Agents Manning and Bonine began an interview ("the FBI interview") with defendant around 1:00 p.m.  (<u>Id.</u> at 9-10, 33.)  After she and Agent Bonine introduced themselves, Agent Manning told defendant something to the effect of "this was his one chance to tell the truth and be cooperative."  (<u>Id.</u> at 34.)  Manning only made this one statement about defendant's opportunity to cooperate before advising defendant of his <u>Miranda</u> rights; she did not make "any

promises or offers" to defendant and did not ask him any questions before the <u>Miranda</u> rights were given.  (<u>Id.</u> at 35.)

At 1:06 p.m., Agent Manning reviewed an "Advice of Rights" form with defendant and advised him of his <u>Miranda</u> rights: "We went over [the form], the main points . . . he doesn't have to talk to us if he doesn't want to, he can contact his attorney.  We made sure he understood that, asked him if he had any questions."  (<u>Id.</u> at 10-14.)  Defendant read the form, stated that he understood his rights, and, at 1:07 p.m., signed the form below a line that read: "I have read this statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present."  (<u>Id.</u>)  Agents Manning and Bonine then interviewed defendant, who "gave an inculpatory statement regarding his online communications."  (Def.'s Mot. Suppress Statement ("Mot. Supp. Statement") 1.)  About forty minutes later, defendant said he was "getting tired and didn't feel like he could really focus," and the agents stopped the interview.  (Tr. 15.)  U.S. Marshals took custody of defendant at 2:15 p.m.  (<u>Id.</u> at 40.)

2.  <u>Seizure and Forensic Analysis of Defendant's Computer</u>

United States Magistrate Judge Restrepo approved a search warrant for defendant's house on March 11, 2011.  (Search Warrant, Def.'s Mot. Suppress Phys. Evid. ("Mot. Supp. Phys. Evid.") Ex. A; Tr. 16-17.)  The warrant was supported by Agent Manning's thirty-five-page affidavit in support of probable cause, which recounted the details of the undercover investigation.[1]  (Andrea Manning Aff. ("Manning Aff."), Search Warrant Attach.; Tr. 17.)  The affidavit included a section on "Specifics Regarding the Seizure and Searching of Computer Systems" that requested authorization "to search, copy, image and seize the computer hardware

---

[1] Defendant concedes that Manning's affidavit established probable cause as to the offenses defendant allegedly committed.  (Mot. Supp. Phys. Evid. 2.)

. . . and to conduct an offsite search," citing the complexity of computer searches.  (Id. at 33-34.)

The affidavit explained the search methodology that the FBI would employ if permitted to do an

offsite search.  (Id. at 34-35.)

      The warrant stated that the search was to be executed "on or before March 24, 2011."

(Search Warrant 1.)  Attachment B to the warrant, incorporated by reference, was a list of "Items

to be Searched for, Seized, and Examined" ("the Item List").  The Item List included:

> 3.  All documents (in documentary or electronic form), including
> correspondence, records, e mails, chat logs, and internet
> history, pertaining to violations of Title 18, United States Code,
> Sections 2242(a), 2422(b) and 1470 or pertaining to an interest
> in the sexual abuse of children whether transmitted or received.
> . . .

> 4.  All . . . records bearing on the production, reproduction,
> receipt, shipment, orders, requests, trades, purchases, or
> transactions of any kind involving the transmission through
> interstate or foreign commerce including . . . by computer
> evidencing a sexual interest in minors.

> 5.  All records which evidence operation or ownership or use of
> computer equipment found in the above residence . . . .

> 9.  All computer passwords, keywords and other data security
> devices designed to restrict access to or hide computer
> software, documentation, or data. . . .

> 10.  Evidence of logs and files on a computer or storage device . . .
> which describes the history and use of the device, including but
> not limited to files indicating when files were written, were
> opened, were saved, or were deleted. . . . .

> 11.  The following may be seized and searched for all items listed
> above, and for any items specifically noted in the paragraphs
> below:

>> a.  Computer hardware . . .

>> b.  Computer software, meaning any and all data, information,
>> instructions, programs or program codes . . . .

  c.  Computer related documentation . . . .

  d.  Data security devices . . . .

  e.  All storage media . . . .

  The above seizure of computer and computer related hardware related to such computer related items as being the instrumentalities of crime and also to allow for analysis/search for evidence of crime in an appropriate forensic setting.  Upon a determination that such examination would be more appropriately made in a controlled environment, the storage media may be removed and examined in a laboratory location.

(Item List 2-4.)

   FBI agents searched defendant's house on March 14, 2011, and seized defendant's computer, which they gave to Agent Manning that same day.  (Tr. 18.)  She brought it to the FBI regional forensic laboratory in Radnor, Pennsylvania, on March 22, 2011.  (Id. at 19.)  On May 11, 2011, Manning received the lab's forensic report and "work product" that agents recovered from defendant's computer.  (Id. at 19-20.)  The work product included the fifty-eight pages of documents (hereinafter the "logs and records") that are the subject of defendant's motion to suppress physical evidence.  (Id. at 20-21.)  The logs and records include some of defendant's Internet search and usage history and e-mail exchanges and logs of Internet Relay Chat conversations with individuals whom defendant believed to be underage girls or their mothers.  Some of the logs and records pertain to defendant's interactions individuals other than "Jill" and "Jen."  (Mot. Supp. Phys. Evid. 9.)  The logs and records bear the date that Manning printed them, May 31, 2011.  (Tr. 22.)

### B.  Defendant's Motion to Suppress Statement

   In his brief, defendant raised two arguments in support of his Motion to Suppress Statement.  First, he sought suppression of any inculpatory statements made prior to waiving his

Miranda rights.  (Mot. Supp. Statement 1.)  Second, defendant sought suppression of any statements he made during the FBI interview because his waiver of Miranda rights was not knowing, voluntary, and intelligent.  (Id. at 2.)

The evidence presented at the hearing demonstrated that defendant did not make any inculpatory statements at the time of his arrest, during the transport to the FBI field office, or during the FBI interview before the agents reviewed the Miranda rights form with him.[2]  During oral argument, defendant's counsel focused entirely on his second claim and advanced two arguments.  First, according to defendant, the FBI agents improperly coerced defendant to waive his Miranda rights.  (Tr. 76.)  Second, it was improper for the Pretrial Services Office to interview defendant before the FBI interview because the Pretrial Services interview put defendant in a mindset of compliance with government requests for information, undermining his ability to waive his Miranda rights voluntarily.  (Id. at 77-78.)

### C.  Defendant's Motion to Suppress Physical Evidence

Defense counsel made three arguments in support of his contention that the Court should suppress fifty-eight pages of logs and records recovered from defendant's computer.  First, the search warrant was fatally general or overbroad because it included both defendant's house and his computer; the government should have obtained a second warrant for the computer.  (Tr. 87.)  Second, the search exceeded the scope of the warrant because the FBI agents recovered more than "specific text files related to the conversations between [defendant and] the Boise, Idaho police officer posing as a mother and her daughter."  (Mot. Supp. Phys. Evid. 9.)  Third, the

---

[2] The Court granted defendant's motion for in camera review of Agent Manning's rough notes from the FBI interview so that the Court could determine if the notes reflected any pre-Miranda-warning statements.  The Court has reviewed the rough notes and determined that they do not contain any references to pre-Miranda-warning statements.

search of the computer was invalid because it occurred outside the fourteen-day time period

authorized by the search warrant.[3]  (Id. at 9-10; Tr. 78-80.)

## III.    LEGAL STANDARD

"On a motion to suppress, the government bears the burden of showing that each

individual act constituting a search or seizure under the Fourth Amendment was reasonable."

United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005) (citing United States v. Johnson, 63

F.3d 242, 245 (3d Cir. 1995)).  The government must meet this burden by a preponderance of the

evidence.  United States v. Matlock, 415 U.S. 164 (1974).

## IV.    DISCUSSION

### A.  Motion to Suppress Statement

#### 1.  Legal Standard – Miranda Waiver

Before law enforcement may question a suspect who is in custody, they must apprise him

of his Constitutional rights.  Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).  A valid waiver

of those rights must be knowing, voluntary, and intelligent.  See id. at 444; United States v.

Pruden, 398 F.3d 241, 246 (3d Cir. 2005).  In other words, the waiver must be "the product of a

free and deliberate choice rather than intimidation, coercion, or deception" and "must have been

made with a full awareness both of the nature of the right being abandoned and the consequences

of the decision to abandon it."  Moran v. Burbine, 475 U.S. 412, 421 (1986).  "Only if the

'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and

the requisite level of comprehension may a court properly conclude that the Miranda rights have

been waived."  Id. (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)).  The government

---

[3] The parties also briefed the issue of whether suppression would be required if the Court found a
Fourth Amendment violation under United States v. Leon, 468 U.S. 897 (1984).  The Court does
not reach this issue because it concludes that no Fourth Amendment violation occurred.

must prove waiver of Miranda rights by a preponderance of the evidence.  Colorado v. Connelly, 479 U.S. 157, 168 (1986).

        2.  Analysis

      Defendant's arguments focus on the voluntariness prong of the Miranda waiver analysis. First, he contends that Agent Manning coerced him into waiving his Miranda rights.  At oral argument, defense counsel emphasized that Agent Manning admitted on cross-examination that her goal before starting the interview was to get defendant to agree to waive his rights and give a statement.  (Tr. 75-76.)  Second, according to defendant, the fact that the FBI interview followed the Pretrial Services interview created an irreversibly coercive atmosphere in which defendant's Miranda waiver could not be voluntary. (Id. at 76-77.)

      As to defendant's first argument, the totality of the circumstances establishes that defendant's was not coerced to speak with the FBI agents without an attorney present. Defendant is an educated man in his sixties, a former college professor and high school teacher, and a fluent English speaker.  (Id. at 66-67.)  This evidence supports the government's contention that defendant is a sophisticated individual who understood the situation in which he found himself.  See United States v. Velasquez, 885 F.2d 1076, 1087 (3d Cir. 1989) (holding waiver valid when defendant was a forty-three-year-old "mature adult" with a college education who spoke English).  Before reviewing the waiver form, Agent Manning, who maintained a calm demeanor throughout the interview, made one statement to defendant to the effect that he had one chance to tell the truth or one chance to cooperate.  The FBI agents did not ask defendant any questions before they reviewed his Miranda rights just a few minutes after beginning the interview, and defendant neither asked for an attorney nor refused to participate in the interview. See United States v. Oppong, 165 F. App'x 155, 160 (3d Cir. 2006) (holding waiver valid when

defendant "did not request an attorney, was not interrogated prior to receiving Miranda warnings, and did not make any statements prior to being advised of his rights").  Agent Manning reviewed the waiver form with defendant and explained it to him.  Defendant stated to her that he understood the form and the effect of his signing it.  Although not dispositive, an express written waiver is "usually strong proof of [its] validity."  See North Carolina v. Butler, 441 U.S. 369, 373 (1979).

Contrary to defendant's argument, Agent Manning's statement that defendant had one chance to cooperate does not compel a finding of coercion.  "Government agents may validly make some representation to a defendant or may discuss cooperation without rendering the resulting confession involuntary."  Miller v. Fenton, 796 F.2d 598, 608 (3d Cir. 1986); see also United States v. Falciglia, 421 F. App'x 146, 147 (3d Cir. 2008) ("[A]n officer may indicate that the defendant's statements could bring about leniency without violating Miranda.") (citation omitted).  There was no evidence that Agent Manning made defendant any promises or assurances regarding what would happen if he agreed to give a statement, and the isolated statement regarding defendant's one chance to cooperate does not amount to coercion.

Defendant's second argument is that no waiver that follows a Pretrial Services interview can be voluntary because a defendant who has had to answer biographical questions in a non-interrogation context is in the mindset of agreeing to cooperate and cannot make a "free and deliberate" choice to answer questions from law enforcement.  (Tr. 77.)  Defendant has not cited any authority in support of this proposition, which conflicts with the well-established rule that the ultimate inquiry is whether the Miranda waiver was knowing, voluntary, and intelligent in the totality of the circumstances.  See Velasquez, 885 F.2d at 1086.  Moreover, the argument fails to appreciate the distinction between custodial interrogation and "questions [designed] to secure the

biographical data necessary to complete booking or pretrial services," which do not implicate

Miranda.  See Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990) (citation and internal quotation

marks omitted).  Even assuming that a Pretrial Services interview would prime or predispose a

defendant to answer questions, there is a significant disconnect between, on the one hand, being

asked to answer a variety of innocuous questions about one's background and, on the other,

being asked to waive one's Constitutional right against self-incrimination to discuss the details of

an alleged crime with different individuals in a different room.  Defendant's second argument is

even less compelling because, as discussed above, the Court's review of the totality of the

circumstances establishes that defendant is an intelligent person who received his Miranda rights,

understood them, and executed a written form acknowledging his desire to answer questions

notwithstanding his Constitutional rights.

 The Court concludes that defendant's Miranda waiver before the FBI interview was

voluntary, knowing, and intelligent.   Thus, Defendant's Motion to Suppress Statement is denied.

 **B.  Motion to Suppress Physical Evidence**

 Defendant raises three arguments in support of his Motion to Suppress Physical

Evidence: the search warrant for his home was general or overbroad; the search of his computer

exceeded the scope of the warrant; and the search of the computer occurred outside the

authorized fourteen-day time period.  The Court addresses each of these arguments in turn.

 1.  General or Overbroad Warrant

 Defendant argues both that the search warrant was overbroad because it impermissibly

authorized searches both for defendant's home and for his computer equipment and that the

search warrant was a "general warrant" that authorized a "broad sweeping search."  (Mot. Supp.

Phys. Evid. 7-8.)  General warrants are treated differently from overbroad warrants under the

Fourth Amendment.  "The distinction is key, as general warrants are strictly prohibited under the Fourth Amendment, while overbroad warrants are cured if limited by operation of a narrow search or if the executing officers acted in good faith."  United States v. Wright, 730 F. Supp. 2d 358, 365-66 (E.D. Pa. 2010).  Accordingly, the Court considers defendant's general-warrant argument first and then addresses his contention that the warrant was overbroad.

### i.  Legal Standard – General Warrant

The Fourth Amendment prohibits general warrants. Andresen v. Maryland, 427 U.S. 463, 480 (1976); Marron v. United States, 275 U.S. 192, 195 (1927). "A general warrant is a warrant that authorizes 'a general, exploratory rummaging in a person's belongings.'" United States v. Christine, 687 F.2d 749, 758 (3d Cir. 1982) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). The prohibition "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Andresen, 427 U.S. at 480 (citations omitted). "[E]xamples of general warrants are those authorizing searches for and seizures of such vague categories of items as 'smuggled goods,' 'obscene materials,' 'books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas,' 'illegally obtained films,' and 'stolen property.'" Christine, 687 F.2d at 753 (citations omitted).  "[T]he only remedy for a general warrant is to suppress all evidence obtained thereby." United States v. Yusuf, 461 F.3d 374, 393 n.19 (3d Cir. 2006); see also Christine, 687 F.2d at 758.

### ii.  Analysis – General Warrant

The warrant in this case "did not authorize an exploratory rummaging."  See United States v. Tracey, 597 F.3d 140, 154 (3d Cir. 2010).  The warrant incorporated the Item List as an

attachment, which clearly identified the specific items the FBI agents could locate and seize. (Item List, Search Warrant Attach. B, at 1.)  This list was both particularized and tailored to the offenses the government believed defendant had committed.  (Item List 1 ("1.  All visual depictions pertaining to the transfer [of] obscene matter to a minor and used to . . . entice . . . an individual to travel in interstate commerce to engage in illegal sexual activity . . . 2.  All documents . . . pertaining to violations of Title 18, United States Code, Sections 2422(a), 2422(b), and 1470 . . . .").)  Although there is no per se requirement that the search warrant describe the criminal activity alleged, United States v. Slaey, 433 F. Supp. 2d 494, 495 n.1 (E.D. Pa. 2006), such a description shows that the discretion of the agents was limited and thus that the warrant was not general, United States v. Kow, 58 F.3d 423, 427 (9th Cir. 1995).  Moreover, the search warrant in this case was more particular than the warrant the Third Circuit found acceptable in United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57), which authorized a search for "1) Receipts, invoices, lists of business associates, delivery schedules, ledgers, financial statements, cash receipts, disbursement, and sales journals, and correspondence; 2) Computers, computer peripherals, related instruction manuals and notes, and software in order to conduct an off-site search for electronic copies of the items listed above."  307 F.3d 137, 149 (3d Cir. 2002); see also United States v. Richards, __ F.3d __, at *16 (6th Cir. Oct. 24, 2011) (observing that courts "have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers"); Lesoine v. Cnty. of Lackawanna, 77 F. App'x 74, 79 (3d Cir. 2003) (finding warrant lacked particularity in child pornography case where warrant "placed no restrictions on the type of business or computer records that could be seized, regardless of their connection, if any, to a [criminal offense]").

-12-

The search warrant in this case did not "vest the executing officers with unbridled discretion to conduct an exploratory rummaging through [defendant's] papers in search of criminal evidence."  See Tracey, 597 F.3d at 151.  Thus, the Court concludes that the search warrant was not a general warrant.

### iii.  Legal Standard – Overbroad Warrant

To determine whether the warrant was overbroad, this Court "must compare the search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit."  In re Impounded Case, 840 F.2d 196, 200 (3d Cir. 1988) (citing Christine, 687 F.2d at 753).  Under the Fourth Amendment, "'[a]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based.'"  Christine, 687 F.2d at 753 (quoting 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.6, at 97 (1978)).  "The fact that the warrant authorize[s] a search for a large amount of documents and records does not necessarily render the search invalid so long as there exists a sufficient nexus between the evidence to be seized and the alleged offenses."  United States v. Am. Inv. of Pittsburgh, 879 F.2d 1087, 1105-06 (3d Cir. 1989).  An overly broad warrant can be cured by redaction, that is, by "striking from a warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment."  Christine, 687 F.2d at 754.

### iv.  Analysis

Defendant contends that the warrant was overbroad for two reasons.  First, the searches of the house and the computer were separate searches that required separate warrants.  (Tr. 81.)  Second, the warrant "should have been limited to the alleged criminal activity for which the

government had probable cause, specifically the communications between the defendant and the Boise, Idaho[,] police detective."  (Mot. Supp. Phys. Evid. 8.)  The Court rejects both of these arguments.

The affidavit of probable cause in this case was thirty-five pages long and recounted the Idaho detective's six-month investigation of defendant's alleged attempts to contact mothers with minor daughters for illicit sexual purposes on the Internet.  The affidavit included a list of the undercover detective's qualifications, (Manning Aff. 1-2); identified the federal criminal statutes that defendant allegedly violated, 18 U.S.C. §§ 1470 and 2422(a)-(b), (Manning Aff. 2-3); and explained the computer technology used in the investigation in layman's terms (id. at 3-4).  The affidavit connected defendant's computer usage with his residence, stating that a subpoena return linked defendant's online aliases to Austin Winther, the Comcast Internet service subscriber at 38 W. Upsal Street in Philadelphia, PA.  (Id. at 5, 27.)  Moreover, the affidavit established that files on defendant's computer would contain at least some of defendant's Internet browsing history.  (Id. at 34 ("[F]iles that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.").)

Defendant's argument that separate warrants are required to search defendant's house and his computer ignores the fact that defendant's computer use is the essence of the crimes with which he is charged: using the computer to access the Internet to entice interstate travel for illegal sexual activity, to entice a minor to engage in illegal sexual activity, and to attempt to transfer obscenity to a minor.  "[F]ederal courts have not required a second warrant to search a properly seized computer where the evidence obtained in the search did not exceed the probable cause articulated in the original warrant."  Richards, ___ F.3d at *15.  The computer and its contents were the focal point of the search warrant, not afterthoughts.  The affidavit of probable

cause established a sufficient nexus between defendant's alleged inappropriate Internet activities and the house in which the computer was located.  See Voicenet Commc'ns, Inc. v. Corbett, No. 04-1318, 2010 WL 3657840, at *12-13 (E.D. Pa. Sept. 13, 2010) (rejecting overbreadth challenge in child pornography case where "the affidavit of probable cause specifically establishe[d], in detail, how the plaintiffs' computer system would be of evidentiary value in the search for evidence of child pornography").

This case bears a strong resemblance to United States v. Christie, in which the defendant was charged with advertising child pornography on the Internet and "[t]he entirety of the FBI's investigation of him focused on his use of a computer to receive, distribute, and advertise child pornography."  570 F. Supp. 2d 657, 683-84 (D.N.J. 2008).  The Christie court emphasized that Internet usage was at the core of defendant's alleged crimes and rejected an overbreadth challenge to a warrant that authorized a search for a list of items very similar to the Item List in this case:

> the seizure of 'any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants' [so that law enforcement could] 'search for data that is capable of being read or interpreted by a computer.

Id.

As in Christie, the scope of the search authorized in this case was no broader than was supported by the affidavit of probable cause.  Contrary to defendant's claim, the warrant did not authorize the search and seizure "of all the files within [defendant's] computer."  (Mot. Supp. Phys. Evid. 8.)  The warrant instead repeatedly limited the search's scope to the offenses

-15-

charged.  (See, e.g., Item List ¶ 11 (restricting search of computer-related items to "items listed above" and "items specifically noted").).

Defendant's second argument is also unpersuasive.  The warrant did not need to be limited to the conversations defendant had with "Jill" and "Jen."  The Constitution imposes "no per se requirement that a search warrant describe the criminal activity alleged."  United States v. Fumo, 565 F. Supp. 2d 638, 644 (E.D. Pa. 2008) (internal quotations omitted); see also United States v. Grubbs, 547 U.S. 90, 97 (2006) (holding that the Fourth Amendment "specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized'").  The warrant's description of the crimes for which the defendant was under investigation – in paragraphs one and two of the Item List – weighs in favor of a finding that the warrant was not overbroad.  Fumo, 565 F. Supp. 2d at 644 n.5.

Defendant relies on United States v. Clough, 246 F. Supp. 2d 84, 87-88 (D. Me. 2003), to establish that this warrant was overbroad.  However, Clough is distinguishable; the warrant in that case had "no restrictions on the search, no references to statutes, and no references to crimes or illegality."  Id.  The search warrant in this case had all three of those attributes: it restricted the search to items pertaining to a prurient interest in illicit sexual contact with minors, it referenced three federal criminal statutes, and it referenced the three offenses which the government suspected defendant of committing.

The Court thus concludes that the search warrant was not overbroad and that the government was not required to obtain a second search warrant for defendant's computer.

-16-

2.  <u>Search Outside of Authorized Scope</u>

*i.  Legal Standard – Scope of Search*

Under the Fourth Amendment, a search pursuant to a warrant is limited to the scope of the warrant. "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." <u>Andresen</u>, 427 U.S. at 480 (citations omitted). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." <u>Horton v. California</u>, 496 U.S. 128, 140 (1990).  "Whether evidence is within a search warrant's scope requires not a 'hypertechnical' analysis, but a 'common-sense, and realistic' one."  <u>United States v. Okorie</u>, 425 F. App'x 166, 169 n.1 (quoting <u>United States v. Srivastava</u>, 540 F.3d 277, 291 (4th Cir. 2008)).

*ii.  Analysis*

Defendant contends that "[o]nce the government obtained . . . the specific text files related to the conversations between the Boise, Idaho, police officer posing as a mother and her daughter, and the defendant, the search should have ended.  Any further search, even if provided for in the body of the warrant, exceeded the scope of the warrant . . . ."  (Mot. Supp. Phys. Evid. 9.)  According to defendant, the logs and records must be suppressed because their contents are not directly related to defendant's exchanges with "Jill" and "Jen" and include documents the government may seek to introduce at trial as other-acts evidence under Fed. R. Evid. 404(b). (<u>Id.</u>)  Defendant misconstrues the inquiry the Court must undertake.  The issue is not whether the logs and records were evidence of a separate offense.  Instead, the issue is whether the warrant,

on its face and "read in a common sense, non-technical fashion," authorized the seizure of the

logs and records.[4]  See Doe v. Groody, 361 F.3d 232, 239 (3d Cir. 2004).

      As discussed supra, the warrant was not limited specifically to the conversations between

defendant and the undercover officer.  Rather, the Item List was framed in terms of the offenses

that the government believed defendant to have committed.  (See, e.g., Item List 2-3 (listing,

inter alia, items "pertaining to the transfer . . . of obscene matter to a minor . . .  or attempt to . . .

entice . . . an individual to travel in interstate commerce to engage in illegal sexual activity" and

"documents . . . pertaining to an interest in the sexual abuse of children").)  Review of the logs

and records that defendant seeks to suppress confirms that they are within the ambit of the search

the warrant authorized.  For example, they include a list of Internet usernames and addresses

with phrases after them like "bb, 34 UK, 5'3 fair hair and rounded, married, boy 13 mark and

girls 11 mary and 9, boy peeks at mom, mary. accidents happen."  (Logs and Records, Mot.

Supp. Phys. Evid. Ex. B, at 5.)  The logs and records also include an e-mail from "Austin A.

Winther" to "Lara" that states: "Tell me EXACTLY how much more money you need.  Tell me

EXACTLY where you are, when you will leave to come here and when you will arrive."  (Id. at

28.)  The records also include lists of websites, some of which have sexually explicit addresses

like "www.slutload.com/watch/LB4irPCwPZr/Amateur-Mature-Mother-and-son-incest.html."

(Id. at 31.)  These documents pertain to "an interest in the sexual abuse of children" or to

attempts to entice an individual to travel to engage in illegal activity, so the warrant authorized

---

[4] Defendant has not challenged the methodology that the FBI forensic laboratory used to search his computer, relying instead on the theory that the search should have stopped at items related to the exchanges between defendant and the undercover officer.  There is no evidence presently before the Court as to the methodology the laboratory used, which, if challenged by defendant, would require an entirely different analysis.  See United States v. Stabile, 633 F.3d 219, 237-40 (3d Cir. 2011) (reviewing cases from other circuits on computer search methodology and upholding search in which detective discovered child pornography while looking for evidence of computer crimes).

the FBI to seize them under a realistic, common-sense reading.  See Okorie, 425 F. App'x at 169 n.1.  Thus, the Court concludes that the seizure of the logs and records did not exceed the scope of the search warrant.

### 3.   Search Outside of Authorized Time Period

#### i.   *Legal Standard – Timeliness of Search*

Search warrants issued by federal courts must require execution within fourteen days. Fed. R. Crim. P. 41(e)(2)(A)(i).  However, a search warrant "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) . . . refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review." Fed. R. Crim. P. 41(e)(2)(B) (emphasis added).

The Fourth Amendment requirement for timely execution of a warrant is broader than the fourteen-day requirement of Rule 41(e)(2)(B).  "[A] warrant need only be executed within a reasonable time after its issuance, notwithstanding the presence of 'forthwith' language in the warrant."  United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975).  "Timeliness of execution should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for delay was per se reasonable or unreasonable. Rather it should be functionally measured in terms of whether probable cause still existed at the time the warrant was executed."  Id. at 655; see also 4 W. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 4.7 (1978).

-19-

*ii.  Analysis*

Defendant makes two arguments in support of his contention that the forensic search of his computer, which occurred sometime between March 22, 2011, and May 11, 2011, violated the Fourth Amendment.  First, he claims that the March 24, 2011, deadline on the warrant's face was the "[u]nless otherwise specified" language of Rule 41(e)(2)(B) that required both the seizure of the computer and the forensic analysis to be completed within fourteen days of the warrant's approval.[5]  Second, defendant asserts that, even though Rule 41(e)(2)(B) authorizes the "two-step procedure" whereby agents seize a computer within the fourteen-day period but do not perform forensic analysis until a later date, the "two-step procedure" violates the Fourth Amendment.  The Court addresses each argument in turn.

Defendant's first argument contradicts the plain language of Rule 41(e)(2)(B) and the search warrant.  In this case, the magistrate judge used the standard template for search warrants, form AO-93.[6]  (Search Warrant 1.)  He completed the search-by date on the form so that the warrant reads: "YOU ARE HEREBY COMMANDED to search on or before March 24, 2011." (Id.)  Rule 41(e)(2)(B), added to the Federal Rules of Criminal Procedure in 2009, makes clear that a two-step search process is now the default unless the warrant explicitly provides otherwise. A search warrant thus authorizes later review of the computer equipment – as long as the electronic storage media is seized within fourteen days – unless the warrant otherwise specifies a

---

[5] The evidence at the hearing confirmed that the search warrant for defendant's home was executed on March 14, 2011, within the fourteen-day period authorized by the warrant and required by Fed. R. Crim. P. 41(e)(2)(A).  The computer was seized and brought to Agent Manning that day.

[6] The latest version is available at http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO093.pdf.

date certain for the forensic analysis to be run.  The notes regarding Rule 41(e)(2)(B) confirm this interpretation:

> Computers and other electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location. This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant . . . .

> In addition to addressing the two-step process inherent in searches for electronically stored information, the Rule limits the [14] day execution period to the actual execution of the warrant and the on-site activity. While consideration was given to a presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place, the practical reality is that there is no basis for a "one size fits all" presumptive period. . . . The rule does not prevent a judge from imposing a deadline for the return of the storage media or access to the electronically stored information at the time the warrant is issued.

Committee Comments to 2009 Amendments.

Under defendant's interpretation, any judge completing the search warrant template in an electronic-media case would be limiting the time frame for forensic analysis, which would contravene the Rules Committee's intent and ignore the plain language of Rule 41(e)(2)(B).  The warrant did not expressly limit the time the government had to run the analysis; to the contrary, it authorized "analysis/search for evidence of crime[s] in an appropriate forensic setting" and contemplated that the computer could be "removed and examined at a laboratory location." (Item List 4.)  Thus, the Court rejects defendant's argument that the search warrant in this case required the analysis of the computer to be completed by March 24, 2011.

Defendant's next argument is that Rule 41(e)(2)(B) violates the Fourth Amendment by permitting a two-step seizure and search process for electronic storage media.  However, since

Rule 41(e)(2)(B) was enacted in 2009, at least three courts have held that the rule authorizes two-step searches that do not violate the Fourth Amendment.  See United States v. Widmer, No. 09-CR-6225L, 2010 WL 4861513, at *6-7 (W.D.N.Y. Aug. 20, 2010) (report and recommendation of magistrate judge, adopted in relevant part by 2010 WL 4861508, Nov. 30, 2010) (discussing Rule 41(e)(2)(B) and stating that onsite review of computer files to determine which are responsive to a search warrant is "impractical"); United States v. Kernell, No. 3:08-CR-142, 2010 WL 1491873, at *14 (E.D. Tenn. Mar. 31, 2010) ("[F]orensic analysis of the data on the Defendant's computer without a written search methodology and in excess of the ten-day time limitation in Rule 41 does not violate the Fourth Amendment."); United States v. Roberts, No. 3:08-CR-175, 2010 WL 234719, at *19-20 (E.D. Tenn. Jan. 14, 2010) (same).

In other cases addressing warrants issued before Rule 41(e)(2)(B) became effective, courts routinely held that the two-step seizure and search process for computers was constitutional.  See United States v. Ivers, 430 F. App'x 573, 575-76 (9th Cir. 2011) (in child pornography case, search of computer one month after warrant-execution deadline was reasonable and did not violate Fourth Amendment); United States v. Stanton, No. 2:09-cr-175-MEF, 2010 WL 2179892, at *9-10 (M.D. Ala. Apr. 30, 2010) (analysis of computer outside ten-day period authorized by Rule 41 did not violate Fourth Amendment and did not require suppression, even assuming violation of rule); United States v. Burgess, 576 F.3d 1078, 1096-97 (10th Cir. 2009) (forty-day delay between warrant expiration and forensic analysis did not violate Fourth Amendment because warrant was secured prior to seizure, probable cause did not dissipate, and officers were diligent); United States v. Brewer, 588 F.3d 1165, 1173 (8th Cir. 2009) (forensic analysis performed several months after execution deadline on state warrant did not violate Fourth Amendment; warrant had not become stale before computer analyzed); United

-22-

States v. Syphers, 426 F.3d 461, 468-69 (1st Cir. 2005) (collecting cases in which courts

permitted delay in execution of warrants involving computers and holding that no violation

occurred when government sought one-year extension to analyze computer); United States v.

Gorrell, 360 F. Supp. 2d 48, 55 n.5 (D.D.C. 2004) (warrant required only search of defendant's

home, not analysis of seized items, within time period; ten-month delay did not require

suppression); United States v. Triumph Capital Grp., Inc., 211 F.R.D. 31, 66 (D. Conn. 2002)

(off-site analysis outside ten-day period did not violate warrant; "neither Rule 41 nor the Forth

(sic.) Amendment impose any time limitation on the government's forensic examination of the

evidence seized").  These cases confirm that the two-step procedure is valid under the Fourth

Amendment without consideration of Rule 41(e)(2)(B).

The Court concludes that the forensic analysis of defendant's computer outside the

fourteen-day time period authorized in the warrant did not violate the Fourth Amendment.

Defendant's Motion to Suppress Physical Evidence is therefore denied.

## V.      CONCLUSION

The Court concludes that the government has met its burden of establishing by the

preponderance of the evidence that defendant waived his Miranda rights knowingly,

intelligently, and voluntarily.  The Court further concludes that the search warrant was not a

general warrant and was not overbroad, the government's search did not exceed the scope of the

warrant, and the forensic analysis of defendant's computer outside the fourteen-day period for

execution of the warrant did not violate the Fourth Amendment.  Accordingly, the Court denies

Defendant's Motion to Suppress Statement and Defendant's Motion to Suppress Physical

Evidence.  An appropriate Order follows.